IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SARA L. CREECH,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>　　　　　　　Defendant. | CV 16-136-BLG-TJC<br><br><br>**ORDER** |

On September 6, 2016, Plaintiff Sara L. Creech ("Plaintiff") filed a

complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting

judicial review of the final administrative decision of the Commissioner of Social

Security ("Commissioner" or "Defendant") regarding denial of Plaintiff's claim for

supplemental security income under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381-1383f.  (Doc. 1.)  On November 14, 2016, Defendant filed an

Answer (Doc. 8) and the Administrative Record ("A.R.") (Doc. 9).

Presently before the Court is Plaintiff's motion for summary judgment

seeking reversal of Defendant's denial and remand for an award of disability

benefits, or alternatively for further administrative proceedings.  (Doc. 14.)  The

motion is fully briefed and ripe for the Court's review.  (Docs. 15-16.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds that the case should be **REMANDED** for further administrative proceedings.

## I.     PROCEDURAL BACKGROUND

Plaintiff previously filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and supplemental security income benefits under Title XVI, 42 U.S.C. § 1381-1383f, in September 2010.  (A.R. 135-143; *See also Creech v. Colvin*, 1:13-CV-72-BLG-SHE (D. Mont.).)  Plaintiff's prior application was denied by ALJ Michael A. Kilroy on April 3, 2012.  (A.R. 135-143.)  The decision was affirmed by this district court and by the Ninth Circuit Court of Appeals.  (*Creech*, 1:13-CV-72-BLG-SHE, Docket No. 22 (D. Mont. April 10, 2014)); *Creech v. Colvin*, No. 14-35499 (9th Cir. Sept. 4, 2015).)

On May 16, 2013, Plaintiff filed a second application for supplemental security income benefits, which is the subject of this action.  (A.R. 269-274.) Plaintiff alleged she has been unable to work since November 8, 2008 due to "severe back and leg pain."  (A.R. 285.)  The Social Security Administration denied Plaintiff's second application initially on July 19, 2013, and upon reconsideration on November 12, 2013.  (A.R. 149-157; 159-168.)  On December 4, 2013, Plaintiff filed a written request for a hearing.  (A.R. 125-227.)

Administrative Law Judge Michael A. Kilroy (the "ALJ") held a hearing on December 23, 2014. (A.R. 25-84.) On February 20, 2015, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 11-20.) Plaintiff requested review of the decision on March 25, 2015. (A.R. 7.) The ALJ's decision became final on July 7, 2016, when the Appeals Council denied Plaintiff's request for review. (A.R. 1-6.) Thereafter, Plaintiff filed the instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve

months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## C. Presumption of Continuing Non-Disability

In the Ninth Circuit, the principles of res judicata apply to the Commissioner's final decisions regarding disability. *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985). However, "the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). If an ALJ finds that the claimant is not disabled in a prior final decision, then a presumption of continuing non-disability arises with respect to any subsequent social security claim. *Id.*; Acquiescence Ruling 97-4(9).

In order to overcome the presumption of continuing non-disability, the claimant bears the burden to prove "'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citing *Taylor*, 765 F.2d at 875). Changed circumstances include a change in the claimant's age category, an increase in the severity of the claimant's impairments, existence of new impairments not previously considered, or a change in the criteria for determining disability. Acquiescence Ruling 97-4(9). If the claimant rebuts the presumption by proving changed circumstances, principles of res judicata still require that certain findings made by the ALJ in the prior final decision be given some res judicata consideration. *Id.* Where the prior final decision "contained findings on the claimant's residual functional capacity, education, and work experience, SSA may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's residual functional capacity, education or work experience." *Id.*

## III. FACTUAL BACKGROUND

### A. Medical Evidence

#### 1. Treating Physician Evidence

##### a. *R. James Nichols, M.D.*

Plaintiff has seen Dr. R. James Nichols since 2008 for pain management associated with her degenerative disk disease and failed back syndrome, and has

been a patient in his clinic since 1988. (A.R. 364-382; 384.) Since 2008, Dr. Nichols has placed Plaintiff on various medications for pain management, depression, and hypothyroidism. (A.R.335-384, 396-397.)

In September 2012, following the prior final decision of the ALJ, Plaintiff returned to see Dr. Nichols. (A.R. 338.) Dr. Nichols indicated he saw Plaintiff for ongoing management of degenerative disc disease, failed back syndrome, chronic pain, and major depressive illness. (A.R. 338.) Dr. Nichols noted that Plaintiff was having "significant difficulties with managing her pain," and he increased the dosages of her pain medications. (*Id.*) The following month, Plaintiff reported the fentanyl patches Dr. Nichols prescribed were not sticking to her skin. (A.R. 337.) At that time, Dr. Nichols noted Plaintiff's "depression and hypothyroidism appeared to be under adequate control." (*Id.*)

In March 2013, Dr. Nichols noted Plaintiff was experiencing continued lumbar radiculopathy down her left leg, and was having less pain control. (A.R. 335.) Dr. Nichols indicated Plaintiff had "no disability with walking." (A.R. 335.) Dr. Nichols noted he discussed broadening Plaintiff's care by increasing the dosages of some of her medications, and adding a muscle relaxer. (*Id.*)

In July 2013, Plaintiff was again having problems with her fentanyl patches falling off, and requested a different medication because she was experiencing withdrawal symptoms. (A.R. 345.) Dr. Nichols adjusted her pain medications.

(A.R. 345-353.) He noted that Plaintiff's mental state was "anxious, agitated." (A.R. 346.)

In March 2014, Dr. Nichols noted that Plaintiff was "having significant pain not improved with her breakthrough medications," and that she was taking the maximum allowed amount of her breakthrough pain medications. (A.R. 358.) Dr. Nichols stated the pain was not allowing Plaintiff to perform activities of daily living without significant pain. (*Id.*) Dr. Nichols also noted that there was "no change in numbness weakness or muscle strength." (*Id.*) Dr. Nichols indicated Plaintiff was not interested in surgery because she had two prior failed surgeries. (*Id.*) Two months later, Dr. Nichols started Plaintiff on a trial of long-acting morphine. (A.R. 360-361.)

In December 2014, plaintiff reported having a significant increase in pain. (A.R. 396.) Dr. Nichols noted Plaintiff was having difficulty staying in an upright position, that when she stands or sits for any length of time she has severe back pain and must lay down, and that Plaintiff cannot stay sitting for over 30 minutes without resting and changing position. (*Id.*) Dr. Nichols indicated he declined to increase Plaintiff's opiates, and instead increased other non-opiate medications. (*Id.*)

In January 2015, Dr. Nichols signed an updated MRI report that confirmed mild changes at L4-5 and continued marked narrowing at L5-S1. (A.R. 398-399.)

On December 15, 2014, Dr. Nichols submitted a letter on behalf of Plaintiff. (A.R. 384.)  He explained Plaintiff suffers from failed back syndrome, that she had two prior back surgeries that were unsuccessful, and has instability and chronic neuropathy.  (*Id.*)  He stated Plaintiff suffers chronic daily pain, stiffness, and weakness from her failed back disorder.  (*Id.*)  He stated Plaintiff also suffers from major depressive illness and is on chronic antidepressant therapy.  (*Id.*)  He opined that the opioid therapy Plaintiff requires significantly impairs her from working. (*Id.*)  He also opined that her mental health disorder combined with her chronic back dysfunction made her likelihood of returning to consistent gainful employment very low.  (*Id.*)

On December 19, 2014, Dr. Nichols completed a Residual Functional Capacity Form.  (A.R. 388-393.)  Dr. Nichols stated he treated Plaintiff for pain management related to neurogenic pain from multi-level degenerative disk disease and management of depression.  (*Id.*)  Dr. Nichols indicated Plaintiff suffers from pain in her lower back and legs, numbness in her left leg, weakness in both legs, and depression.  He noted Plaintiff has difficulty with walking, sitting, and standing.  (*Id.*)  Dr. Nichols opined that Plaintiff can stand for no longer than 30 minutes, sit for 60 minutes, and that she must lay down during the day.  (*Id.*)  He also opined that she can walk 50-100 feet without stopping, and can regularly lift and carry no more than 5 pounds.  (*Id.*)  Dr. Nichols stated major depressive

disorder also hindered Plaintiff's ability to work. (*Id.*) Dr. Nichols found

Plaintiff's prognosis is "fair and best," and she would have "continued daily

dysfunction." (*Id.*) Dr. Nichols further opined that Plaintiff's credibility was

"good," and there was an objective medical reason for her pain, shown by MRI

results. (*Id.*) Dr. Nichols concluded that Plaintiff would not be able to resume

work due to her degree of dysfunction and chronic condition. (*Id.*)

b. *Gregory S. McDowell, M.D.*

On November 7, 2008, Dr. Gregory S. McDowell performed surgery on

Plaintiff's spine. (A.R. 368-369.) Dr. McDowell noted Plaintiff previously had a

decompression at L5-S1 and discectomy, as well as decompression and discectomy

at L4-5 in 2005. (*Id.*) Dr. McDowell performed a revision decompression and

discectomy at the left at L4-5. (*Id.*)

2. <u>Non-Examining Physician Evidence</u>

a. *William Fernandez, M.D.*

Dr. William Fernandez reviewed Plaintiff's medical records, but had no

contact with her, and did not testify at the hearing. He issued an opinion on July

17, 2013 at the initial level of review. (A.R. 148-156.) Dr. Fernandez opined that

Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk

for 2 hours, and sit for 6 hours in an 8-hour work day. (A.R. 153.) Dr. Fernandez

found Plaintiff must frequently alternate sitting and standing to relieve pain. (*Id.*)

b.    *Tim Schofield, M.D.*

Dr. Tim Schofield, also reviewed Plaintiff's medical records, had no contact with her, and did not testify at the hearing.  Dr. Schofield issued an opinion on November 10, 2014 at the reconsideration level of review.  (A.R. 158-167.)  Dr. Schofield opined that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk for 2 hours, and sit for 6 hours in an 8-hour work day, with frequently alternating between sitting and standing.  (A.R. 164.)  Dr. Schofield also reduced Plaintiff's postural limitations of climbing ramps/stairs, balancing, kneeling, crawling from frequently to occasionally, and reduced climbing ladders/ropes scaffolds from occasionally to never.  (A.R. 153-154, 164.)

**B.    The Hearing**

1.    <u>Plaintiff's Testimony</u>

On December 23, 2014, Plaintiff testified at the hearing before the ALJ in Billings, Montana.  (A.R. 26-83.)  Plaintiff testified that she lives in a multi-level home with her 15-year-old daughter and 21-year-old twins.  (A.R. 34.)  Plaintiff stated that on a typical day she spends most of her time in bed or on the couch with her legs propped up, with a heating pad on her lower back.  (A.R. 38-40, 48.)  Plaintiff's children do the household chores, grocery shopping, and cooking.  (A.R. 40-42.)  Plaintiff stated that she used to do a lot of the household chores, but she stopped because her pain has gotten worse.  (A.R. 53.)  Plaintiff testified that she

no longer drives because her left leg is numb and she can't feel the pedals.  (A.R.) Plaintiff estimated that she can lift and carry 5 pounds, can sit for 30 minutes, and can walk for about 15 minutes before needing to take a break.  (A.R. 46, 48.) Plaintiff said she can stand for about 10 minutes, but she has numbness in her left foot and leg, and she sometimes falls.  (A.R. 47, 49.)

Plaintiff stated that she has more pain during the cold months, and is able to function a little better in the summer.  (A.R. 45-46.)  Plaintiff testified that she has bad days where she stays in her room all day with the door shut, doesn't eat, and doesn't talk to her kids at all.  (A.R. 50.)  She stated she has at least two bad days a month.  (*Id.*)

Plaintiff indicated she sees Dr. Nichols when her pain medication is not working as well.  (A.R. 50.)  She also stated she talks to Dr. Nichols about her depression.  (A.R. 60.)  Plaintiff indicated that she is miserable and cries all the time.  (*Id.*)  Plaintiff explained she chose not to have a fourth back surgery because she doesn't know what the outcome will be, or if it would make her worse.  (A.R. 51.)  Plaintiff testified that her medications make her drowsy and affect her memory.  (A.R. 53.)

### 2.    Lay Witness Testimony – Plaintiff's Son

Plaintiff's adult son, Diamond Creech, testified that he lives at home with Plaintiff.  (A.R. 65.)  Mr. Creech stated that in colder weather, Plaintiff spends 90

percent of her time in her room, and in warmer weather, she is there about 8 hours. (A.R. 66-67.) He stated that when Plaintiff is downstairs, she mainly stays on the couch with her feet up. (A.R. 72-73.) Mr. Creech testified that Plaintiff has 16 or 17 bad days per month in the winter, and less in the summer. (A.R. 68.) He said on bad days, Plaintiff will stay in her room all day with a heating pad on her back and the door shut. (A.R. 68.) He reported that Plaintiff is irritable, and that she seems sadder than she was a couple years ago. (A.R. 70-71.) Mr. Creech stated Plaintiff no longer drives because of the numbness in her foot. (A.R. 67, 72-73.) He said he works an evening shift so he can drive his younger sister to and from school. (A.R. 71-72.) Mr. Creech testified that Plaintiff makes an effort to help with household chores. (A.R. 69.) He gave the example that Plaintiff attempted to help his sister make some cookies, but she had to sit down after 20 to 30 minutes. (*Id.*) He stated when Plaintiff tries to do more with the household chores, it sets her back and she will be in more pain and stay in bed more. (A.R. 70-71.) Mr. Creech reported he and his twin sister do most of the household chores. (A.R. 73.)

### 3. Vocational Expert's Testimony

Delane Hall, a Vocational Expert, also testified before the ALJ. (A.R. 76-81.) The ALJ asked Mr. Hall three hypothetical questions. First, the ALJ asked Mr. Hall to assume a person the same age as Plaintiff, and with the same work history and educational background, who could walk and stand for 15 minutes at a

time, and sit for 8 hours in an 8-hour workday with opportunities for breaks, lift 10 pounds occasionally and less than 10 pounds frequently, could not crawl, climb ladders or scaffolding, and could not perform work that required constant focus. (A.R. 78-79.) Mr. Hall testified that there would be jobs for such a person, including a callout operator, addresser, and document preparer. (A.R. 79.)

Second, the ALJ asked Mr. Hall to assume the same person but with the limitation that the person could sit for 6 hours a day, rather than 8. (A.R. 80.) Mr. Hall stated that would not change his prior answer. (*Id*.) Third, the ALJ asked Mr. Hall to assume the same person, but with the requirement the person needed longer meal/break periods or would miss more than 2 days of work per month. (*Id.*) Mr. Hall stated no jobs would be available. (*Id.*)

Plaintiff's counsel asked Mr. Hall whether the person discussed in the ALJ's first hypothetical would be capable of any jobs if the person were limited to lifting 5 pounds. (A.R. 81.) Mr. Hall stated the document preparer job would be eliminated, but not the others. (*Id.*) Next, Plaintiff's counsel asked if there would be jobs available if the person was limited to walking and standing less than 2 hours, sitting 2 hours total, and laying down the rest of the time. (*Id.*) Mr. Hall stated there would not. (*Id.*) Finally, Plaintiff's counsel asked Mr. Hall to assume the same person in the ALJ's first hypothetical, but with the added limitation that

the person's concentration and focus was impaired at a marked level. (A.R. 81.)

Mr. Hall responded that there would not be any jobs for such an individual. (*Id.*)

### C. The ALJ's Findings

The ALJ began his consideration of Plaintiff's claim by recognizing the prior decision finding Plaintiff not disabled, and acknowledging applicability of *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998) and Acquiescence Ruling 97-4(9). (A.R. 11-12.) Because of the prior decision, the ALJ properly limited his consideration to the period of time after April 3, 2012, which was the date of the previous denial.

The ALJ then followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of May 16, 2013. (A.R. 14.) Second, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease status-post lumbar surgeries x 3 and hypertension." (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 15.) Fourth, the ALJ stated he had given effect to Plaintiff's previous residual functional capacity ("RFC") as required by *Chavez* and Acquiescence Ruling 97-4(9). The ALJ found that Plaintiff had "shown a very mild change in severity of her symptoms," and

therefore made "only nominal changes in the [RFC] finding."[1]  (A.R. 12.)  The

ALJ stated Plaintiff has the RFC to:

> perform sedentary work as defined in 20 C.F.R. 416.976(a) except the claimant is limited to standing or walking for two hours in an eight-hour day and sitting for six hours in an eight-hour day.  She is able to walk for 15 minutes at a time, stand for 15 minutes at a time, and sit for one hour at a time.  She needs to alternate among standing, walking, and sitting according to the above timeframes.  She is occasionally able to lift and carry ten pounds and frequently lift and carry less than ten pounds.  The claimant is able to perform occasional stooping, crouching, balancing, and climbing of ramps/stairs, and is never able to crawl or climb of ladders, ropes, or scaffolds.  She needs to avoid concentrated exposure to temperature extremes and vibrations.  Due to her pain, she is prevented from performing jobs that require constant focus such as production rate work and work requiring constant undivided attention.

(A.R. 15.)

The ALJ next found that Plaintiff is unable to perform any of her past

relevant work.  (A.R. 18.)  Fifth, the ALJ found Plaintiff could perform sedentary

---

[1] The ALJ noted Plaintiff previously had the RFC to "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant was limited to standing or walking for two hours in an eight-hour day and sitting for six hours in an eight-hour day.  She was able to walk for forty-five minutes at a time, stand for forty-five minutes at a time, and sit for two hours at a time.  She needed to alternate among standing, walking and sitting.  She was occasionally able to lift and carry ten pounds and frequently lift and carry less than ten pounds.  The claimant was able to perform occasional stooping, crouching, crawling, balancing, and climbing of ramps/stairs, and no climbing of ladders, ropes or scaffolds.  She needed to avoid concentrated exposure to temperature extremes and vibrations.  Due to her pain, she was prevented from performing jobs that require constant focus such as production rate work and work requiring constant undivided attention."  (A.R. 12.)

jobs that exist in significant numbers in the national economy in light of her age (44 years old at the time of her application, which is defined under SSA regulations as a younger individual), education (high school), work experience, and RFC. (A.R. 18-19.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 20.)

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) improperly discrediting Plaintiff's testimony; (2) failing to give proper consideration to the lay witness testimony of Plaintiff's son; (3) failing to give proper weight to the opinion of her treating physicians, Dr. R. James Nichols and Dr. Gregory McDowell; (4) failing to consider the extent of her depression as an impairment; and (5) failing to incorporate all of Plaintiff's impairments into the vocational consultant's hypothetical questioning.  (Doc. 14.)

### A.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ made only a general credibility finding without providing clear and convincing reasons for rejecting her testimony.  Plaintiff further argues that her testimony was fully supported by the objective medical evidence.  The Commissioner counters that the ALJ properly identified Plaintiff's subjective complaints and his reasons for finding them not entirely credible.

/ / /

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the

claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996);

*Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may also take the

lack of objective medical evidence into consideration when assessing credibility.

*Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

However, the ALJ may not reject the claimant's statements about the intensity and

persistence of their pain or other symptoms "solely because the available objective

medical evidence does not substantiate [the claimant's] statements."  20 C.F.R. §

404.1529(c)(2).

      Here, the first step of the credibility analysis is not at issue.  The ALJ

properly determined that Plaintiff's medically determinable impairments could

reasonably be expected to cause her symptoms, and there is no argument that

Plaintiff is malingering.  Therefore, the ALJ was required to provide clear and

convincing reasons for rejecting Plaintiff's testimony regarding her symptoms.

      The ALJ's discussion of Plaintiff's credibility is sparse.  The ALJ stated he

found Plaintiff's testimony regarding her symptoms "not entirely credible for the

reasons explained in this decision."  (A.R. 16.)  Then, the ALJ summarized the

medical evidence.  (A.R. 16-17.)  In that discussion, the ALJ made only one direct

reference to Plaintiff's credibility.  The ALJ pointed out that in March 2014, Dr.

Nichols noted Plaintiff was having significant pain that was not controlled by her

breakthrough medications, but she denied having any changes in numbness,

weakness or muscle strength.  (A.R. 17.)  The ALJ stated Plaintiff's "denial of any change in numbness, weakness or muscle strength is in opposition to her allegations in connection with her applications for disability, with the undersigned giving her allegations less weight accordingly."  (A.R. 17.)

In *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015), the Ninth Circuit held an ALJ fell short of providing specific, clear, and convincing reasons for rejecting a claimant's testimony by merely reciting the medical evidence in support of his residual functional capacity finding.  The Court explained summarizing the medical record "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."  *Id.* at 494 (emphasis in original).   The Ninth Circuit also emphasized that the ALJ must identify specifically *which* of the claimant's statements he found not credible and *which* evidence contradicted that testimony.  *Id.* 493-494.

Here, the ALJ failed to set out the specific "allegations in connection with her applications for disability," that he found not to be credible.  Was it Plaintiff's need to lay down throughout the day, that she does no chores, that her lifting is restricted, or the level of back and leg pain she described?  The most specific thing the ALJ stated was that Plaintiff told Dr. Nichols her numbness, weakness or muscle strength was not worse in March 2014.  From that, it might be inferred that the ALJ did not believe her statements about the numbness in her foot, or her

ability to drive. However, the Court is not permitted to make such inferences. *See Brown-Hunter*, 806 F.3d at 494 (explaining the district court may not draw inferences from the ALJ's summary of the medical record to find a basis for the adverse credibility determination where the ALJ did not himself draw those conclusions).

Without the required specificity, the Court cannot meaningfully review the ALJ's decision to determine whether the ALJ arbitrarily discredited Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."); *Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' . . . we still demand that the agency set forth the reasoning behind its decision in a way that allows for meaningful review.") (citation omitted).

Because the ALJ failed to point to the specific parts of Plaintiff's testimony he found not credible, and failed to link that testimony to particular parts of the record, the ALJ erred. *Brown-Hunter*, 806 F.3d at 494. *See also Mangat v. Colvin*, 2017 WL 1223881, *5 (S.D. Cal. Feb. 3, 2017) ("The ALJ failed to point to specific parts of Plaintiff's testimony he discredited. This error alone is fatal to the ALJ's credibility determination.").

The reasons Defendant asserts in her brief for supporting the ALJ's credibility determination (such as the fact that Dr. Nichols declined to increase Plaintiff's opiate therapy in March 2013 or that Dr. Nichols noted there had been no disability with walking) may be a basis to find Plaintiff was not credible. But the ALJ must articulate those reasons. The Court is not permitted to piece together the medical evidence identified by the ALJ and draw conclusions where the ALJ did not. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

As such, the Court finds that the ALJ's credibility finding is not supported by specific, clear, and convincing reasons.

### B. The ALJ's Evaluation of Lay Witness Testimony

Plaintiff next argues the ALJ failed to cite specific and germane reasons to discount the testimony of her son, Donovan Creech. The Commissioner argues the ALJ properly considered Mr. Creech's testimony by giving it probative weight and incorporating it into the RFC.

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Competent lay witness testimony "*cannot* be

disregarded without comment." *Id.* (emphasis in original). The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

From a review of the record, it is apparent Mr. Creech's testimony was based upon his personal observations of Plaintiff. (A.R. 65-76.) He noted that Plaintiff frequently experiences bad days, where she stays in her room and lays on a heating pad all day. *Id.* He also explained that when Plaintiff tries to help with household chores she ends up in more pain and stays in bed more. *Id.* He indicated Plaintiff has increased sadness and depression, and that she no longer drives due to numbness in her foot. *Id.*

The ALJ said he appreciated Mr. Creech's testimony that Plaintiff exacerbates her symptoms when she attempts to perform household chores. He then stated that the RFC helped to avoid any "excessive physical activity," and concluded Mr. Creech's testimony would be given "probative weight." (A.R. 18.) Nevertheless, he thereafter completely disregarded Mr. Creech's testimony.

Under the foregoing Ninth Circuit authority, such treatment of lay testimony is insufficient. The ALJ must either take the testimony into account, or expressly

24

determine to disregard it and, in doing so, give germane reasons. *Nguyen*, 100 F.3d at 1467. Here, the ALJ erred by failing to articulate a reason for the weight he assigned Mr. Creech's testimony, or why he disregarded the testimony in making his disability determination. Further, the Court finds the error was not harmless under the particular circumstances of this case.

An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Ninth Circuit has explained that "where the ALJ's error lies in the failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Where the ALJ rejects a lay witness's testimony without providing germane reasons, but has given adequate reasons for rejecting similar testimony by the claimant or another witness, the ALJ's failure to discuss the lay witness testimony is harmless. *Molina*, 674 F.3d at 1116, 1121-22. *See also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the Court has already concluded that the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony. As such, the

Court cannot rely on the ALJ's findings with respect to Plaintiff's testimony as providing a sufficient basis for the ALJ's rejection of Mr. Creech's testimony. *See e.g. Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 885 (9th Cir. 2006) (finding that where the "ALJ did not make a legally sufficient adverse credibility finding with regard to [the claimant's] own testimony, we cannot say with respect to [the lay witness's] testimony that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'").

Further, Mr. Creech's testimony, if credited, may affect the determination regarding Plaintiff's allegations of disability. At the hearing, the vocational expert testified that there were no jobs available for a hypothetical individual with Plaintiff's characteristics who needed to take longer than customary breaks, who needed to miss work two or more times per month, or who could only walk/stand for 2 hours total, sit for 2 hours total, and needed to lay down the rest of the time. (A.R. 80-81.) Mr. Creech's testimony corroborates Plaintiff's testimony regarding her sitting/standing limitations, as well as the frequency with which she has bad days and does not leave her bedroom. Therefore, if fully credited, Mr. Creech's testimony could have caused a reasonable ALJ to reach a different disability determination.

Accordingly, the Court finds the ALJ's failure to provide germane reasons for discounting Mr. Creech's testimony is not harmless.

## C. The ALJ's Evaluation of the Treating Physicians' Opinions

Plaintiff contends that the ALJ improperly discounted Dr. Nichols' and Dr. McDowell's opinions without clear and convincing reasons. In response, the Commissioner argues the ALJ properly considered Dr. Nichols' opinion and that Plaintiff failed to provide any specific argument with respect to Dr. McDowell, and did not even identify what his opinion is.

### 1. Legal Standard

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as

an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 600

(9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"However, the opinion of the treating physician is not necessarily conclusive as to

either the physical condition or the ultimate issue of disability." *Id*. *See also*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating

physician's opinion is generally afforded the greatest weight in disability cases, it

is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability.").

    If the treating physician's opinion is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques, or is inconsistent with

other substantial evidence in the record, it is not entitled to controlling weight.

*Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security

Ruling 96-2p).  In that event, the ALJ must consider the factors listed in 20 C.F.R.

§ 404.1527(c) to determine what weight to accord the opinion.  *See* Social Security

Ruling 96-2p (stating that a finding that a treating physician's opinion is not well

supported or inconsistent with other substantial evidence in the record "means only

that the opinion is not entitled to 'controlling weight,' not that the opinion should

be rejected.  Treating source medical opinions are still entitled to deference and

must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The

factors include: (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3)

supportability of the opinion; (4) consistency of the opinion with the record as a

whole; (5) the specialization of the treating source; and (6) any other factors

brought to the ALJ's attention that tend to support or contradict the opinion.  20

C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain

circumstances.  *Lester,* 81 F.3d at 830.  To discount an uncontradicted opinion of a

treating physician, the ALJ must provide "clear and convincing reasons."  *Id.*  To

discount the controverted opinion of a treating physician, the ALJ must provide

"'specific and legitimate reasons' supported by substantial evidence in the record."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157

F.3d 715, 725 (9th Cir. 1998).  The ALJ can accomplish this by setting forth "a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.

He must set forth his own interpretations and explain why they, rather than the

doctors' are correct."  *Reddick*, 157 F.3d at 725.  "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection

of the opinion of either an examining physician *or* a treating physician."  *Lester*, 81

F.3d at 831.  However, "the findings of a nontreating, nonexamining physician can

amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

2. <u>Dr. Nichols</u>

In his decision, the ALJ gave portions of Dr. Nichols' opinion "significant weight," and other portions only "probative weight." (A.R. 17, 18.) It is also apparent that the ALJ rejected other aspects of Dr. Nichol's opinions.

Regarding Dr. Nichols' December 15, 2014 letter, for example, the ALJ only assigned it "probative weight" because it was inconsistent with his medical records. Reading the paragraph in context, it appears the ALJ found Dr. Nichols' letter conflicted with his records because his records did not indicate a lack of stiffness, muscle weakness, or instability, and did not make frequent mention of lower extremity neuropathy, although it was mentioned occasionally. (A.R. 18.)

With respect to Dr. Nichols' December 19, 2014 medical source opinion, the ALJ concluded that Dr. Nichols' opinion would be given "significant weight" regarding the length of time Plaintiff could sit, stand, and walk. (A.R. 17.) But the ALJ apparently rejected Dr. Nichols' opinion that Plaintiff could only lift and carry less than 5 pounds at a time. (A.R. 18.) The ALJ also did not address Dr. Nichols' opinion that Plaintiff needed to lay down during the day, or that her major depressive disorder affected her ability to work.

An ALJ may reject a treating physician's opinion on the basis that a conflict exists between the treating physician's opinion and the physician's notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the ALJ adequately explained how Dr. Nichols' December 15, 2014 letter conflicted with his own treatment notes. The Court, therefore, finds that the ALJ did not err in assigning only probative weight to the opinions set forth in the letter.

The ALJ did not similarly provide an adequate explanation for rejecting Dr. Nichols' other opinions. With respect to the Dr. Nichols' opinion that Plaintiff could only lift and carry less the 5 pounds, for example, the ALJ adopted a higher lifting/carrying weight, because "the claimant does still attempt to perform household chores including vacuuming and dishes." (A.R. 18). An ALJ may reject a doctor's opinion that is inconsistent with a claimant's daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). But the ALJ does not explain how any of the household activities attempted by the Plaintiff in this case indicate that she is capable of a higher lifting/carrying capacity.

Moreover, the actual testimony was that the plaintiff has not vacuumed for approximately one year, and is simply unable to do so. (A.R. 69). The Plaintiff also testified she has not done dishes for approximately one year, and her son confirmed that if she attempts to do dishes or other household chores "it will set

her back three more days after that." (A.R. 54, 70). The ALJ did not explain how this testimony supported a higher carrying/lifting limitation.

In addition, the ALJ did not provide any reasons for rejecting the portions of Dr. Nichols' medical source opinion that related to Plaintiff's need to lay down during the day[2] or her chronic depression.

Finally, as noted above, "[t]he ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2-6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim*, 763 F.3d at 1161. Here, the ALJ did not appropriately address these factors in discounting the weight to be afforded to Dr. Nichols' testimony.

The Court finds, therefore, that the ALJ failed to set forth specific and legitimate reasons which are supported by substantial evidence for affording portions of Dr. Nichols' opinions lesser weight, or rejecting them altogether. The Court finds, therefore, that the ALJ erred with regard to Dr. Nichols' opinion.

### 3. Dr. McDowell

Although the ALJ's decision did not discuss Dr. McDowell, the Court does not find the omission erroneous. The only document in the record from Dr.

---

[2] Because the Court has found the ALJ's credibility determination was not supported by clear and convincing reasons, the Court rejects the Commissioner's argument that the ALJ's oversight with regard to Plaintiff's need to lay down was harmless error.

McDowell was a treatment note from 2008, which predated the time period at issue.  Treatment records from the previous application are only relevant to the extent they show Plaintiff's condition has changed since her prior claim was denied.  *Fair*, 885 F.2d at 600.  Here, Dr. McDowell's treatment note confirmed that Plaintiff had back surgery in November 2008.  (A.R. 368-369.)  His note did not, however, provide any opinion regarding the severity of Plaintiff's condition or an assessment of her functional limitations. The ALJ recognized that Plaintiff had undergone three prior failed back surgeries.  (A.R. 14.)  Therefore, to the extent Dr. McDowell's note was relevant, it was considered.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").

Accordingly, the Court finds the ALJ's failure to specifically mention Dr. McDowell was not erroneous.

### D.    The ALJ's Failure to Consider Depression as an Impairment

Plaintiff argues the ALJ failed to consider depression as an impairment in combination with her physical impairments.  The Commissioner concedes that the ALJ erred by not considering the severity of Plaintiff's depression, but argues the

error was harmless because the ALJ found Plaintiff had other severe impairments, and continued his analysis beyond step two.

Under step two of the sequential evaluation process, the ALJ must determine whether claimant suffers from a severe impairment or combination of impairments. 20 C.F.R 404.1520(c); 416.920.  At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  The Social Security Act defines a "severe" impairment as one "which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).  The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290.

Here, the medical records show that Plaintiff was diagnosed with and treated for depression by Dr. Nichols.  (A.R. 335-362; 396-397.)  Dr. Nichols also opined that Plaintiff's depression, in combination with her physical impairments, limited her ability to work.  (A.R. 384; 388-393.)  Nevertheless, the AJL did not address Plaintiff's depression at all.  The ALJ only found Plaintiff suffered from

degenerative disc disease status-post lumbar surgeries x3 and hypertension. (A.R. 14.) The ALJ did note the medical records "indicate some anxiety," but found it was not a medically determinable mental impairment. (*Id.*) The Court finds the ALJ's failure to acknowledge the evidence of depression was erroneous.

The Court further finds that the error was not harmless. The ALJ was required to consider all of Plaintiff's impairments in assessing her RFC, including her impairments that are not severe. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. Even though a non-severe "impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.") (citing Social Security Ruling 96–8p)).

Because the ALJ failed to acknowledge the evidence of Plaintiff's depression, the ALJ necessarily failed to consider the combined effect of her impairments in determining her RFC. *Smolen*, 80 F.3d at 1290 ("Having found [the claimant] to suffer from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments . . . affected her residual functional capacity to perform work.").

Accordingly, the Court finds the ALJ's failure to consider depression as an impairment is not harmless error.

**E.      The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.**

If a claimant shows she cannot return to previous work, the burden of proof shifts to the Secretary at step five to show that the claimant can do other kinds of work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).   The Secretary may use a vocational expert to meet that burden.  *Id.*  Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant.  *Id.*  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value.  *Embrey*, 849 F.2d at 422

Plaintiff argues that the only hypothetical the ALJ relied on to find there are jobs she can perform exceeded the limitations found by Plaintiff's treating physician.  As discussed above, the Court has determined the ALJ failed to adequately support his reasons for discounting Plaintiff's testimony, the testimony of Plaintiff's son, portions of the treating physician's opinion, and the ALJ failed to consider Plaintiff's depression.  Accordingly, these errors may have infected the

hypothetical the ALJ relied on, and in turn, the ALJ's determination at step five.

Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for proper consideration of all of her impairments, her credibility, the lay witness testimony, medical evidence, and vocational evidence.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall re-evaluate Plaintiff's credibility and the lay witness testimony.  The ALJ shall also properly evaluate the entire opinion of Plaintiff's treating physician.  The ALJ shall either support his findings with specific and legitimate reasons or

afford Dr. Nichols' opinion greater weight.  The ALJ shall further consider the evidence of Plaintiff's depression and reconsider whether Plaintiff can perform work in the national economy based upon a hypothetical that incorporates of all of her impairments and limitations supported by the record.

## VI.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS ORDERED**.

DATED this 6th day of November, 2017.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge